UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JERRY MOORE                           CIVIL ACTION


VERSUS                                NO: 07-2666


JANET A. NAPOLITANO,                  SECTION: R(5)
SECRETARY, DEPARTMENT OF
HOMELAND SECURITY


## ORDER AND REASONS

Before the Court is defendant Janet A. Napolitano (DHS)'s Partial Motion to Dismiss. (*See* R. Doc. 83.) For the following reasons, Napolitano's motion is GRANTED in part and DENIED in part.


## I.  BACKGROUND

From approximately October 1988 to August 1995, Jerry Moore was a civilian Maintenance Mechanic in the Lamp Shop of the Industrial Division of the United States Coast Guard (USCG) Support Center, Maintenance and Logistics Command (MLC) in New Orleans, Louisiana. Moore claims that the United States Coast

Guard (USCG) unlawfully retaliated against him for pursuing administrative claims of race discrimination. DHS asserts that Moore was terminated because he was physically unable to perform the duties of his job. According to Moore, DHS's explanation is both a pretext and a violation of the Rehabilitation Act.

* * *

In June 1994, Moore and a group of three other African American USCG employees submitted a list of grievances regarding racial discrimination to the USCG command.[1] (*See* R. Doc. 51, Ex. 1 at 349-50.) Negotiations involving the Equal Employment Office (EEO) were initiated by the group in July 1994. (*Id.* at 321, 352.) On September 20 and October 21, 1994, Cdr. Campbell, a supervising USCG officer, drafted memoranda summarizing meetings

---

[1] The eight volume certified administrative record in this case is unpaginated and mostly unindexed. (*See* R. Doc. 81.) Neither party has cited to the certified administrative record in their briefs. Moore has supplied a selective two volume manual attachment, presumably culled from the certified administrative record, that is paginated and unindexed. (*see* R. Doc. 51) For ease of reference, the Court cites to Moore's manual attachment when possible. When relevant documents appear to be missing from the manual attachment, the Court has attempted to locate them in the certified record. The Court observes that it is not required to sift through these thousands of pages on its own initiative to resolve this motion to dismiss. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

at which a number of the group's grievances were addressed. (*Id.* at 331-41.) On November 21, 1994, Cdr. Campbell drafted letters to Moore and two other group members regarding proposed changes to their positions. (*Id.* at 342-45.) It appears that an amicable resolution was reached with two of the members (*id.* at 309), and that those two members received promotions in connection with the EEO-facilitated negotiations (*id.* at 310, 342-43, 351).

The EEO-facilitated negotiations between Moore and USCG apparently broke down at some point in November 1994. (*See* Pl.'s Ex. 1 at 324.) On December 7, 1994, Moore filed a class action administrative complaint of race discrimination against USCG. (*See id.* 314-17.) The class complaint alleged that African American employees at USCG were (a) denied equal opportunities of promotion and training; (b) hired as temporary employees, while white employees were hired as permanent employees; (c) judged by different standards than white employees; and (d) denied opportunities for overtime pay. The class complaint also alleged that USCG was not implementing a Civilian Affirmative Employment Program. (*Id.*) The class complaint is relevant to this case insofar as it provides context.

In the spring of 1995, Moore initiated separate EEO-facilitated negotiations with respect to individual claims of

discrimination. According to an EEO Counselor's Report dated
April 7, 1995, Moore claimed that USCG retaliated against him for
having pursued his class complaint. (*See* R. Doc. 81, Vol. 2, 4A,
Tab B.) After EEO negotiations broke down with respect to his
individual claims, Moore filed an individual administrative
complaint against USCG on April 21, 1995. (*See* R. Doc. 51, Ex. 1
at 295-98.) The individual complaint seeks, *inter alia*,
"cessation of retaliatory action against Jerry Moore and
potential class members in denying them training and job
opportunities." (*Id.*) The individual complaint incorporates a
March 16, 1995 letter to Capt. J.G. Force asserting that
"[s]ubsequent to my filing the class action complaint officials
of the New Orleans support center have acted in hostile manner
towards me and other employees supportive of the class action
complaint, including denial of training requests and promised
promotions." (*Id.*)

Moore's individual complaint was ultimately interpreted by
DOT and the EEOC as raising the issues whether Moore was
discriminated against on the bases of race (African American),
color (black), disability (back injury), and in reprisal for EEO
activity when:

    1.    In an effort to remove Moore from his job, USCG
           demanded that he provide medical information;

2. Moore was denied training;

3. Moore was denied an upgrade/promotion in his position;

4. Moore was not assigned road trips that resulted in a loss of overtime;

5. Moore was removed from a task assignment and replaced by another person who benefitted from technical training;

6. Moore had to contact MLC to get his personnel file;

7. Moore was terminated as a result of his disability;

8. USCG obstructed the administrative process relative to the processing of his class action complaint.

(*See* R. Doc. 81, Vol. 2, 4A, Tab C (Letter from Monte Eeds to Nelson D. Taylor, dated Mar. 27, 1997)); U.S. Equal Empl. Opp. Comm'n, Appeal No. 01794339, 1998 WL 91957, at *1 (Feb. 24, 1998).

Moore's employment was terminated on August 23, 1995, and it appears that little happened with his individual complaint until early 1997. On several occasions between February 28, 1997 and March 17, 1997, DOT apparently requested more specific information from Moore "concerning the dates of [his] allegations and the persons involved." (R. Doc. 81, Vol. 2, 4A, Tab C (Letter from Monte Eeds to Nelson D. Taylor, dated Mar. 27, 1997).) DOT asserted that this information was necessary in order to "determine that the allegations have been timely raised and are of a continuing nature." (*Id.*) DOT apparently informed

Moore's counsel on March 3, 1997 that his failure to respond within 15 days may result in dismissal of his claims. (*Id.*)

Moore's counsel responded to USCG's requests by letter on March 18, 1997. (*See* R. Doc. 81, Vol. 2, 4A, Tab C (Letter from Nelson D. Taylor to Karen Gibson, dated Mar. 18, 1997).) The response gave no dates and identified no persons involved in Moore's claims. Nor did it identify any specific position to which Moore sought but was denied promotion. Instead, it asserted that Moore was wrongfully denied a higher pay grade, and that his position was eventually assigned a higher pay grade only after his termination. The letter concludes that Moore's counsel has "been unable to contact [Moore] and consult about dates since we last talked. Nevertheless, the Counselor's Report in your possession shows discussions about specifics, suggesting that more specific and detailed information is ascertainable from Coast Guard records and officials. In the context of supplemental evidence to support the claim of retaliatory misconduct, I believe that the specifics can be determined during the course of the investigation." (*Id.*) The letter does not request additional time to identify particular dates and persons.

DOT issued a decision on March 27, 1997 accepting issue (1) for further investigation but dismissing all others for failure to cooperate. (R. Doc. 81, Vol. 2, 4A, Tab C (Letter from Monte

Eeds to Nelson D. Taylor, dated March 27, 1997).) Moore appealed DOT's decision to EEOC on May 1, 1997. *See* U.S. Equal Empl. Opp. Comm'n, Appeal No. 01794339, 1998 WL 91957, at *1 (Feb. 24, 1998). On February 24, 1998, EEOC affirmed DOT's dismissal of issues (2)-(6) on the ground that Moore failed to cooperate with DOT's investigation. *Id.* at *2. EEOC also affirmed DOT's dismissal of issue (8) on the ground that the same claim was the subject of a separate administrative action. *Id.* Lastly, EEOC reversed DOT's dismissal of issue (7) on the ground that it was like or related to a matter that had been brought to the attention of the EEO counselor. *Id.* EEOC informed Moore that only the first and seventh issues would be remanded to DOT for further investigation, but that he also had a right to file a civil action. *Id.* at *4. Moore did not file a civil action at that time and chose instead to continue pursuing issues (1) and (7) before DOT.

On remand, DOT conducted an administrative investigation and issued a Report of Investigation (ROI) dated March 13, 1998. (*See* R. Doc. 51, Ex. 2, Gibson ROI.) The ROI purportedly investigated the issue whether USCG discriminated against Moore based on race, color, disability and reprisal "when it demanded medical information, regarding [Moore's] ability to perform his duties . . . in an effort to remove him from his job." (*Id.* at

7

4.)  The ROI is based on several affidavits from Moore and other

USCG employees.  (*Id.*)  In substance, it primarily investigates

USCG's proffered reason for terminating Moore's employment,

namely, his alleged physically inability to perform the duties of

his job.

On April 28, 2005, DOT (by now DHS) issued a final

determination dismissing all of Moore's claims.  (*See* R. Doc. 81,

Vol. 2, 3A.)  The April 2005 determination purportedly resolved

the following issues:

1.   Whether Moore was discriminated against on the bases of
     race, color, physical disability and reprisal for his
     prior EEO activity, when a manager demanded medical
     information regarding his ability to perform his duties
     from his physician on February 6, 1995; and

2.   Whether Moore was discriminated against on the bases of
     race, color, physical disability and reprisal for his
     prior EEO activity, when he was terminated from
     employment with the United States Coast Guard effective
     August 23, 1995.

Moore appealed DHS's final determination to the Merit

Systems Protection Board (MSPB).  An administrative law judge

upheld DHS's final determination on October 5, 2006, (*see* R. Doc.

81, Vol. 6, Tab 17), and a petition to review was denied by the

MSPB Board on January 31, 2007 (*see* R. Doc. 81, Vol. 9).  The

MSPB decision was upheld by the EEOC on March 23, 2007.  *See* U.S.

Equal Empl. Opp. Comm'n, Pet. No. 0320070052, 2007 WL 956520, at

*1 (Mar. 23, 2007).  EEOC's decision informed Moore of his right

to file a civil action "based on the decision of the Merit Systems Protection Board, within thirty (30) calendar days of the date that you receive this decision." *Id.*

This action was filed on April 25, 2007.

* * *

On September 10, 2009, the Court held a final pretrial conference. As a result of issues raised at the conference, a fully briefed motion for summary judgment was denied as premature, and Moore was ordered to file an amended and/or supplemental complaint within fifteen (15) days. (R. Doc. 80.) DHS was given twenty (20) days from the filing of the amended complaint to respond. (*Id.*) Moore filed an amended complaint on September 14, 2009. (R. Doc. 74.) DHS has now filed a "partial motion to dismiss" on grounds that Moore has not exhausted certain claims. (R. Doc. 83.)

## II.   STANDARDS

Dismissal is required if a district court lacks jurisdiction over the subject matter of a plaintiff's claims. *See* Fed. R. Civ. P. 12(b)(1). Dismissal for lack of subject matter jurisdiction may be made on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed

facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See, e.g.*, *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When a defendant's "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action . . . the district court should find that it has jurisdiction over the case and deal with the defendant's challenge as an attack on the merits" under either Rule 12(b)(6) or Rule 56. *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986), *reh'g denied*, 802 F.2d 455 (5th Cir. 1986); *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). Questions of subject matter jurisdiction and the merits will usually be considered intertwined when a federal statute provides both the basis of federal subject matter jurisdiction and the cause of action. *See Clark*, 798 F.2d at 742 (Title VII "both conveys jurisdiction and creates a cause of action").

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 149-50.

## III. DISCUSSION

DHS moves to dismiss all of Moore's "unexhausted and untimely" claims.  (R. Doc. 83 at 5.)  DHS's motion appears to be limited to Moore's Title VII claims as opposed to his Rehabilitation Act claim.  According to DHS, Moore is foreclosed from pursuing – and the Court lacks jurisdiction over – any claims of discrimination and retaliation other than the two issues remanded to DOT by EEOC in its decision of February 24, 1998.  Moore asserts that he is entitled to a trial *de novo* as to all claims "like or related to" or "grow[ing] out of" the allegations in his April 21, 1995 administrative complaint.  (R. Doc. 94 at 5.)

11

**A.    The administrative exhaustion requirement**

It is well established that a federal employee must exhaust his administrative remedies before seeking judicial relief from discriminatory employment practices.[2]  *See* 42 U.S.C. § 2000e-16(b), (c); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976).  To timely initiate a discrimination claim, a federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory . . . ."[3]  29 C.F.R. § 1614.105(a)(1).  "Failure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling."  *Pacheco*, 966 F.2d at 905; *see also Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) (affirming summary judgment in favor of Postal Service because

---

[2] It is less well established whether the exhaustion requirement implicates a federal court's subject matter jurisdiction, or whether it is merely a prerequisite to suit. *Id.* at 788 n.7.  If the latter, it is subject to waiver and estoppel.  The Court need not address this issue because Moore does not make any relevant waiver or estoppel arguments.  *See Clark*, 798 F.2d at 741.

[3] The relevant timing provision in private discrimination cases is 180 or 300 days.  *See, e.g.*, *Morgan*, 536 U.S. at 109 (citing 42 U.S.C. § 2000e-5(e)(1)).  The relevant timing provision for filing EEO charges against federal agencies is 45 days.  *See Pacheco*, 448 F.3d at 786 n.2, 788, 791 n.11 (citing 29 C.F.R. § 1614.105(a)(1)); *Washington v. Dept. of Homeland Sec.*, 324 F. App'x 416, 417 (5th Cir. 2009) (same); *cf. West v. Gibson*, 527 U.S. 212, 219 (1999) (same).

plaintiff failed to contact an EEO counselor within 45 days of the alleged discriminatory conduct); *cf. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (finding failure to promote is discrete act, and plaintiff may file discrimination charge to cover only discrete acts that occurred within appropriate time period); *but see* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 5(c)(2), 123 Stat. 5 (2009) (overturning *Ledbetter* with respect to effects of discriminatory compensation). Provided that administrative remedies are properly exhausted, and regardless of their substantive result, a plaintiff is entitled to a civil trial *de novo* with respect to his discrimination claims. *See Chandler v. Roudebush*, 425 U.S. 840, 862 (1976); *Aldrup v. Caldera*, 274 F.3d 282, 285-87 (5th Cir. 2001).

In determining whether a plaintiff has exhausted his administrative remedies, two competing policies are implicated. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). On one hand, "because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally."[4] *Pacheco*, 448 F.3d at 788; *see also*

---

[4] Because the presently relevant scope of the exhaustion requirement is the same for both federal and private employees,

13

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship."). On the other hand, "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89.

In balancing these competing policies, the Fifth Circuit construes an EEO complaint "broadly" but in light of the administrative investigation that can "reasonably be expected to grow out of the charge of discrimination." *McClain*, 519 F.3d at 273. Thus, a Title VII lawsuit may include allegations "like or related to" the allegations made in the EEO complaint and "growing out of such allegations" during the pendency of the case. *Id.* The exhaustion analysis ultimately is "fact-intensive" and looks to the substance and not merely the four corners of the administrative charge. *Id.*

In addition, at least in Title VII cases by federal employees, exhaustion requires "good faith participation in the administrative process." *Munoz v. Aldridge*, 894 F.2d 1489, 1492 (5th Cir. 1990); *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 397

the Court cites to both federal and private-sector employment-discrimination cases. *See Pacheco*, 448 F.3d at 778 n.6.

(5th Cir. 1998) (same); *see also Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002) (stating that failure to cooperate in administrative process precludes exhaustion when it prevents agency from making determination on the merits). The good faith participation requirement has pragmatic and prudential justifications. Permitting a plaintiff "to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints." *Purtill v. Harris*, 658 F.2d 134 (3d Cir. 1981), *cert. denied*, 462 U.S. 1131 (1983). It would also "burden courts with cases that otherwise might be terminated successfully by mediation and conciliation." *Id.* Accordingly, failure to make a "good faith effort to cooperate with the administrative agency" may prevent exhaustion and preclude judicial review. *See, e.g.*, *Randel*, 157 F.3d at 397 (citing *Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 770 (9th Cir. 1991)). In determining whether a federal employee has participated in good faith with the administrative process, the court takes a "common sense" approach "geared to the functional demands of dispute resolution." *Barnes v. Levitt*, 118 F.3d 404, 409 (5th Cir. 1997) (citing *Munoz*, 894 F.2d at 1493).

The Fifth Circuit has held that a plaintiff does not exhaust administrative remedies if he fails to respond to a valid and necessary request to make a generalized complaint more specific.

*See Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997) (reversing district court's finding of good faith because plaintiff did not provide"necessary relevant information" to agency).  If the agency is unable to "reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not reach the merits either." *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir. 1980); *see also Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983) (same); *Edwards v. U.S. Army*, 708 F.2d 1344, 1347 (8th Cir. 1983) ("It is particularly important that the agency develop a record and have the opportunity to exercise its discretion, to apply its expertise, and, possibly, to discover and correct its own errors."); 29 C.F.R. § 1614.107(a)(7) (providing that instead of dismissing administrative complaint for failure to respond to request for information, "the complaint may be adjudicated if sufficient information for that purpose is available"). Otherwise, "the complainant might be dilatory at the administrative level, knowing that he can get into federal court anyway." *Johnson*, 914 F.2d at 417.

## B.    Exhaustion in this case

    To the extent DHS argues that Moore has exhausted only claims (1) and (7) identified by EEOC in its February 24, 1998

16

decision, it is in error.  Moore is not bound by the "four

corners" of his administrative charge, *see McClain*, 519 F.3d at

273, and the Court's analysis is not formalistic.  In determining

which claims Moore may have exhausted, the Court begins by

interpreting his administrative charge "broadly" and

"substantively" and in light of the administrative investigation

that can "reasonably be expected" to result from it.  *Id.*

Applying the principles discussed above, the Court addresses

six issues raised in EEOC's February 24, 1998 decision.


(1)  <u>Failure to Promote Claim</u>

It appears that during February and March 1997, DOT sent two

letters and made three phone calls to Moore requesting further

information about the dates and persons involved in his failure

to promote claim.  (*See* R. Doc. 81, Vol. 2, 4A, Tab C (Letter

from Monte Eeds to Nelson D. Taylor, dated Mar. 27, 1997)).

Unsatisfied with his March 18, 1997 response, DOT dismissed

Moore's failure to promote claim because it lacked "information

necessary to determine that the allegations have been timely

raised and are of a continuing nature." (*Id.*)  This decision was

upheld by EEOC.  *See* U.S. Equal Empl. Opp. Comm'n, Appeal No.

01794339, 1998 WL 91957, at *1-2 (Feb. 24, 1998) (citing 29

C.F.R. § 1614.107(g)).

In *Johnson v. Bergland*, the Fifth Circuit upheld the
dismissal of a civil complaint because the plaintiff failed to
respond to an agency request for more information concerning
specific instances and dates of alleged discrimination. 614 F.2d
at 417. The facts in *Johnson* are similar to the facts in this
case. In *Johnson*, the plaintiff alleged that by reason of race
and sex discrimination, "the agency had failed to accord the
plaintiff recognition by grade and seniority, thus freezing him
from promotion." *Id.* at 416. The agency director of personnel
then requested information concerning specific instances of
discrimination and their dates in order to determine whether more
than thirty days had elapsed between the incidents and a
consultation requested with the EEO counselor. *Id.* at 417. The
claimant replied in general terms. He identified one instance of
unfair evaluation, but otherwise stated only that "he was
situated among thirty or more employees, all but six or so being
intermittent or temporary employees, doing mail desk and filing
work, whereas six other Grade 5 employees (all white but one, an
Oriental woman) were given more responsible work. . . ." *Id.*
Apparently without sending further requests for information, the
agency concluded that the plaintiff's allegations were "so vague
and general that specific issues related to discrimination cannot
be defined" and cancelled the complaint. *Id.* The Fifth Circuit

agreed, adopting the district court's analysis that an agency may dismiss a complaint on the ground that the complainant "has failed, after due opportunity, to supply the agency with information sufficiently specific to enable it to conduct a meaningful investigation and to determine whether the complaint satisfies the other regulations." *Id.* at 418.

As in *Johnson*, Moore's individual complaint makes only vague references to his failure to promote claim. (*See* R. Doc. 51, Ex. 1 at 295.) The complaint asserts that after Moore filed his class complaint, USCG "acted in a hostile manner towards me . . . including denial of training requests and promised promotions." (*Id.* at 298.) But the individual complaint does not identify what positions were promised, who promised them, who denied them, and when. Instead, it simply asserts that USCG's violations were "continuing." (*Id.* at 295.) These bare allegations of a continuous, retaliatory failure to promote were insufficient to permit a meaningful investigation and adjudication of Moore's claim. Most importantly, without knowing the specific dates on which promotions were allegedly denied, DOT could not determine whether Moore timely contacted an EEO Counselor within 45 days. *See Morgan*, 536 U.S. at 114 (finding that plaintiff may pursue claims with respect to discrete acts such as failure to promote if and only if acts "occurred" within appropriate time period);

29 C.F.R. § 1614.105(a)(1) (providing that EEO Counselor must be contacted within 45 days of federal agency's alleged discriminatory conduct); *Washington v. Dept. of Homeland Sec.*, 324 F. App'x 416, 417 (5th Cir. 2009) (same). Moore filed his class complaint on December 7, 1994. (R. Doc. 51, Ex. 1 at 314.) He did not contact an EEO Counselor with respect to his individual complaint until March 17, 1995. (*See* R. Doc. 81, Vol. 2, 4A, Tab B.) Accordingly, any failure to promote claims arising before January 31, 1995 would have been untimely, and DOT was entitled to request information about which claims were properly before it.

To be clear, the Court does not hold that Moore's administrative complaint was required to fully specify his claims in the first instance. But Moore's failure to provide necessary information in his administrative complaint justified DOT's later requests for information, and Moore's failure to respond to these requests justified the dismissal of his failure to promote claim.

Moore argues that DOT's requests for information should be considered in context. He points out that at the time he filed his individual discrimination complaint, the parties had already addressed his failure to promote claim in the context of his class complaint and through the informal EEO-facilitated negotiation process. (*See, e.g.,* *id.* at 320, 339-41, 349-52,

354-57.) But the Fifth Circuit has held that "[c]ooperation in an earlier informal process is not sufficient to satisfy the obligation to exhaust administrative remedies by cooperating in a subsequent formal investigation." *Barnes*, 118 F.3d at 410. Moreover, considering Moore's failure to promote claim in context does not help him because the nature of his claim becomes only more ambiguous. Moore's list of grievances dated June 13, 1994 asserts that USCG has "No [African American] supervisors now or ever, no apparent plans to have any." (*See* R. Doc. 51, Ex. 1 at 349-56.) It also asserts that USCG failed to implement an affirmative action training program "to facilitate managerial promotions." *Id.* Moore's class complaint dated December 7, 1994 alleges that USCG had "policies and practices" of "excluding black persons from supervisory positions." (R. Doc. 51, Ex. 1 at 315.) The April 7, 1995 EEO Counselor's Report indicates that Moore was raising claims related to a denial of training opportunities. (R. Doc. 81, Vol. 2, 4A, Tab B.) In short, taken in context, Moore's individual complaint could have been interpreted to allege any of a variety of promotion-related claims. Moore, of course, was free to allege and pursue all of these potential claims. But his complaint did not identify which ones he intended to pursue, and USCG was not required to guess. *See Barnes*, 118 F.3d at 410 (inconsistencies between formal and

informal complaints justifies agency's request for information);
*cf. Randel*, 157 F.3d at 395 (Plaintiff's "racial discrimination
claim is separate and distinct from his reprisal claim, and
accordingly, he must exhaust his administrative remedies on that
claim before seeking review in federal court.").  Instead, USCG
was permitted to request specification of Moore's failure to
promote claim in order to permit meaningful investigation and
adjudication, and Moore had an obligation to respond in good
faith to these requests.  Because Moore's failure to provide
reasonably requested information prevented USCG from identifying
and hence ruling on the merits of Moore's claim, the Court
"should not reach the merits either." *Johnson*, 614 F.3d at 418.

Lastly, it is relevant that in response to DOT's several
requests for information in February and March 1997, Moore does
not appear to have requested additional time to respond.
Instead, Moore's counsel wrote that "specifics can be determined
during the course of the investigation." (R. Doc. 81, Vol. 2,
4A, Tab. C.)  The Fifth Circuit has addressed a similar
interaction.  In *Barnes*, a complainant's attorney refused to
respond to an agency's request for further information because
the agency already "had the information for years."  118 F.3d at
407.  The attorney stated that a civil complaint would be filed
and that the agency "will get it in discovery." *Id.*  The Fifth

Circuit found that the complainant failed to cooperate with the agency's investigation, and thus reversed the district court's finding that her claims had been exhausted. *Id.* at 409-10. It did not matter that the complainant had previously cooperated with informal negotiations before filing her administrative complaint. *Id.* As in *Barnes*, although Moore may have cooperated with the informal investigation of his claims, it was insufficient for him simply to assert that further information should be obtained "during the course of the investigation." Moore had a duty to "supply the agency with the information sufficiently specific to enable it to conduct a meaningful investigation" of his failure to promote claim. *Id.* He failed to do so, and DOT had discretion to dismiss this claim.

In sum, the Court has reviewed Moore's administrative complaint and the record before DOT and EEOC at the time Moore's failure to promote claim was dismissed, and the Court finds that DOT lacked sufficient information to meaningfully investigate and adjudicate this claim. DOT accordingly was justified in dismissing Moore's failure to promote claim when he failed to respond to requests for additional information, and DHS's motion is GRANTED with respect to this claim. The Court observes that although Moore has failed to exhaust his failure to promote claim, this decision does not prevent him from introducing

evidence that is relevant to his properly exhausted claims.  *See*

*Morgan*, 536 U.S. at 113.


(2)  <u>Moore's Denial of Upgrade Claim</u>

The Court reaches a different conclusion with respect to

Moore's claim that he was denied an "upgrade" in pay

classification.  The record indicates that USCG had abundant

evidence as to the nature of this claim, and that further

information was unnecessary to its investigation and

adjudication.  Indeed, the record reflects that USCG did in fact

repeatedly address this claim on the merits.

Beginning in June 1994, Moore repeatedly asserted that his

position was improperly classified as WG-9 and not WG-10 on

account of his race:

- In June 1994, in a list of grievances filed on behalf of a
  group of African American employees identifying instances of
  alleged race discrimination, Moore asserted that his
  position was downgraded to a WG-9 after he was hired, and
  that it was never upgraded despite his inquiries.  (*See* R.
  Doc. 51, Ex. 1 at 349-50.)

- In July 1994, in response to the group's grievances, Lt. S.
  Williams wrote an internal USCG memorandum stating that
  Moore "is currently in a WG-9 Maintenance Mechanic position.
  We have determined that a WG-9 Electrician is justified and
  Jerry would likely qualify."  (*Id.* at 351.)  The memorandum
  goes on to state that "once he fills this position and we
  have a chance to review him in this position, we will be
  able to determine whether a WG-10 position is needed and
  whether Jerry would qualify."  (*Id.*)

- Also in July 1994, and in response to an EEO meeting conducted on July 8, 1994, Cwo. R. Bandy recommended that Moore's position be rewritten to WG-10. (*Id.* at 352.)

- In August 1994, an EEO counselor proposed resolving Moore's grievances by upgrading his position to a WG-10. (*See* R. Doc. 51, Ex. 1 at 320.) The Counselor's report indicates that USCG agreed to rewrite Moore's position to "describe duties more accurately" but declined to upgrade it. (*Id.*)

- In October 1994, Cdr. Capbell again acknowledged Moore's desire to be classified as WG-10. (*Id.* at 340.) He wrote a memorandum indicating that Moore's position was "being reviewed" as part of an "organization review." (*Id.*)

- In November 1994, Cdr. Campbell wrote a letter to Moore stating that "your position was rewritten to change the scope of work based on the expected decrease in Aids to Navigation work. The position is being moved to the electric shop which will provide you greater opportunity for promotion in the future. The position remains a Maintenance Mechanic, WG-9." (*Id.* at 344.)

- Also in November 1994, Cdr. Campbell wrote letters to two other African American employees granting them increases in their pay grades. (*Id.* at 342-43.) These increases were offered in settlement of their discrimination grievances. (*Id.* at 309-11.)

- In January 1995, Moore's counsel wrote to Mr. James Whack in the Civil Rights Office of USCG requesting "a pay grade and salary level that reflects [Moore's] rightful place, where they should be if they had been provided equal job opportunities. Mr. Jerry Moore should be upgraded to a WL-10, step 5 Electrician . . . ." (R. Doc. 81, Vol. 2, 4A, Tab C.)

- In April 1995, an EEO Counselor referred to Moore's letter to Mr. Whack in describing the resolution he sought. (*see* R. Doc. 81, Vol. 2, 4A, Tab B).

- In April 1995, Moore filed an individual administrative complaint, which DOT and EEOC ultimately characterized as raising a failure to upgrade claim. (*See* R. Doc. 81, Vol. 2, 4A, Tab C (Letter from Monte Eeds to Nelson D. Taylor,

dated Mar. 27, 1997)); U.S. Equal Empl. Opp. Comm'n, Appeal
No. 01794339, 1998 WL 91957, at *1 (Feb. 24, 1998).

- In March 1997, in response to DOT's requests for further
information about Moore's claims, Moore's counsel wrote that
after Moore's employment was terminated, his "position was
upgraded, an upgrade that was repeatedly denied him . . .
[T]he Coast Guard delayed implementing the upgrade of his
position because of his EEO activity.  Local Coast Guard
officials wanted to get rid of the EEO 'ring leader,' Jerry
Moore, before implementing the upgrades.  So, while Mr.
Moore was under attack, the position upgrades were delayed.
Though they could have done so, Coast Guard officials
delayed implementing the upgrade of positions for black
employees until after Mr. Moore was terminated."  (R. Doc.
81, Vol. 2, 4A, Tab. B.)

In light of this factual context, DOT's request for further

information was unnecessary and its dismissal of Moore's denial

of upgrade claim unjustified.  Moore's denial of upgrade claim

hardly could have been clearer:  according to Moore, his position

was improperly designated as WG-9 and not WG-10 on account of his

race and in retaliation for pursuing administrative

discrimination claims.  DHS has failed to identify any reason why

it could not resolve this claim on the merits, and the Court

finds none.  *See Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir.

1996) ("[T]he policy underlying the [exhaustion] doctrine is not

served unless the default prevents the agency from acting on the

merits of the complaint.")  Indeed, as USCG's various letters,

filings and memoranda well document, USCG has in fact already

offered several explanations for why Moore's position was

classified as WG-9 and not WG-10.  These explanations differ
little, if at all, from a determination on the merits that USCG
properly classified Moore's position.  A "common sense" approach
to administrative exhaustion reveals that USCG had a full and
fair opportunity to investigate and adjudicate Moore's failure to
upgrade claim, and USCG may not avoid judicial litigation of this
claim simply because it sent Moore a redundant request for dates
and names.  *Barnes*, 118 F.3d at 409.

To the extent USCG sought to assert that certain of Moore's
claims were untimely, it could and should have done so on the
record before it.  USCG knew when Moore contacted EEO Counselors,
and the record reveals that Moore unmistakably identified his
denial of upgrade claim nearly every month between June 1994 and
January 1995.  USCG itself interpreted Moore's April 1994
individual complaint as raising a denial of upgrade claim.  *See*
U.S. Equal Empl. Opp. Comm'n, Appeal No. 01794339, 1998 WL 91957,
at *1 (Feb. 24, 1998); (*see also* R. Doc. 81, Vol. 2, 4A, Tab C).
Because USCG lacked a valid reason to dismiss Moore's denial of
upgrade claim, and separately because USCG has already addressed
this claim on the merits, the Court finds that Moore properly
exhausted it.

Lastly, whatever justification USCG had in 1997 to request
specific dates relating to Moore's denial of upgrade claim, that

justification is substantially diminished in light of the Fair

Pay Act.[5]  *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No.

111-2, § 5(c)(2), 123 Stat. 5 (2009).  The Fair Pay Act

overturned the Supreme Court's holding in *Ledbetter v. Goodyear*

*Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), which "unduly

restrict[ed] the time period in which victims of discrimination

can challenge and recover for discriminatory compensation

decisions or other practices."  Pub. L. No. 111-2, § 2(1).  Under

the Fair Pay Act, a federal employee may pursue a Title VII claim

regardless of when a discriminatory pay decision was made as long

as the employee received disparate compensation resulting from

the decision within the relevant limitations period.[6]  42 U.S.C.

---

[5] The Fair Pay Act applies retroactively to all claims of "discrimination in compensation" that are pending on or after May 28, 2007.  Pub. L. No. 111-2, § 6.  Moore's claim is pending "on or after" May 28, 2007.

[6] The Fair Pay Act does not apply to Moore's failure to promote claim because a failure to promote claim is not a "discriminatory compensation" claim.  *See,* e.g., *Vuong v. New York Life Ins. Co.*, Civ. A. No. 03-1075, 2009 WL 306391, at * 8 (S.D.N.Y. Feb. 6, 2009) (finding discrete failure to promote claim timebarred but allowing discriminatory compensation claim under the Fair Pay Act); *Gentry v. Jackson State Univ.*, 610 F. Supp. 2d 564, 566-67 (S.D. Miss. 2009) (finding discrete denial of tenure claim timebarred but allowing denial of salary increase claim under Fair Pay Act).  The Fair Pay Act was intended to return the law to its state immediately prior to *Ledbetter v. Goodyear Tire & Rubber Co*.  550 U.S. 618, 628 (2007).  Pub. L. No. 111-2, §§ 2 (overturning *Ledbetter*), 6 (applying Fair Pay Act retroactively to date of decision in *Ledbetter*).  The Fair Pay Act thus did not disturb *National R.R. Passenger Corp. v. Morgan*,

§§ 2000e-16(f), 2000e-5(e)(3).  In effect, the Fair Pay Act

removes the 45 day timing requirement of 29 C.F.R. §

1614.105(a)(1) with respect to claims of discriminatory

compensation.  *See* 42 U.S.C. § 2000e-5(e)(3)(B).  Thus,

regardless of when USCG actually denied Moore's requests for an

upgrade in pay classification, his claim is not timebarred

because he continued to receive compensation under the WG-9

classification even after he filed his individual complaint.

        For the reasons stated, DHS's motion to dismiss Moore's

denial of upgrade claim is DENIED.

        (3)  <u>Failure to Train Claim</u>

        To the extent Moore seeks to raise a discriminatory failure

to train claim, that claim has not been exhausted for the same

reasons that his failure to promote claim has not been exhausted.

Although the parties addressed allegations of failure to train in

informal EEO-facilitated negotiations, they remained vague.  The

administrative record does not reveal what specific training

--------

which held that a plaintiff may not file an administrative charge
with respect to discrete acts (*e.g.*, failure to promote claims)
that did not occur within the appropriate limitations period,
even when they are related to timely filed charges.  536 U.S. at
114.  Furthermore, § 2000e-16(f) expressly states that, at least
with respect to claims against the federal government, § 2000e-
5(e)(3) applies only "to complaints of discrimination in
compensation."

opportunities were allegedly denied, who denied them, or when. (*See* R. Doc. 51, Ex. 2 at 107-09, 112-17.) Moore's counsel did not mention a failure to train claim in his letter of March 18, 1997. (R. Doc. 81, Vol. 2, 4A, Tab. B, (Letter from Nelson D. Taylor to Karen Gibson, dated March 18, 1997).) Without knowing the specific dates on which training was allegedly denied, DOT could not determine whether Moore timely contacted an EEO Counselor within 45 days. *See* 29 C.F.R. § 1614.105(a)(1). Accordingly, DOT was justified in requesting further information about Moore's failure to train claim, and Moore's failure to respond justified dismissal of the claim. Because DOT was unable to rule on the merits of Moore's failure to train claim, the Court should not reach the merits either. *Johnson*, 614 F.3d at 418. DHS's motion is GRANTED with respect to Moore's failure to train claim.

### (4) Denial of Road Trips

The Court finds that Moore has exhausted his allegations concerning USCG's denial of road trip opportunities, but only in the context of his retaliation claim. In the April 7, 1995 EEO Counselor's Report, Moore alleged that as a result of pursuing his class complaint, "road jobs previously scheduled were

cancelled resulting in loss of overtime."[7]  (*See* R. Doc. 81, Vol.

2, 4A, Tab B.)  DOT and EEOC later characterized Moore's

individual administrative complaint as encompassing a denial of

road trips claim.  (*See* R. Doc. 81, Vol. 2, 4A, Tab C); U.S.

Equal Empl. Opp. Comm'n, Appeal No. 01794339, 1998 WL 91957, at

*1 (Feb. 24, 1998).  DOT did in fact investigate Moore's denial

of road trips claim and respond to it on the merits.  (*See* R.

Doc. 81, Vol. 2, 4A, Tab B (EEO Counselor's Report, dated April

7, 1995).)  It stated that Moore was not permitted to go on

certain road trips because he was needed at the support center

because of the workload, and that he was not permitted to go on

others because of his purported disability.  (*Id.*)  In Moore's

May 1997 affidavit, Moore again alleged that "USCG started

canceling scheduled road trips I had during the informal EEO

process of my complaint."  (R. Doc. 51, Ex. 2 at 108.)  DOT's ROI

acknowledged this allegation.  (*See* R. Doc. 51, Ex. 2, Gibson ROI

at 7.)  DHS has failed to articulate any reason why further

information was necessary to investigate and adjudicate Moore's

denial of road trips claim.  *See Wilson*, 79 F.3d at 165 ("[T]he

policy underlying the [exhaustion] doctrine is not served unless

---

[7] Because this claim implicates "discriminatory
compensation," it is subject to the Fair Pay Act.  Lilly
Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 5(c)(2), 123
Stat. 5 (2009).

the default prevents the agency from acting on the merits of the complaint."). It was straightforward for DOT to investigate which road trips Moore was scheduled to attend around the time of the EEO-facilitated negotiations, which were cancelled, and whether they were cancelled for a legitimate reason. Indeed, it appears from the April 1995 EEO Counselor's Report that DOT performed such an investigation. (*see* R. Doc. 81, Vol. 2, 4A, Tab B). Again, a "common sense" approach to administrative exhaustion reveals that USCG had a full and fair opportunity to investigate and adjudicate Moore's denial of road trips claim, and it may not avoid judicial litigation of this claim simply because it sent Moore a redundant request for dates and names. *Barnes v. Levitt*, 118 F.3d 404, 409 (5th Cir. 1997). Accordingly, DHS's motion is DENIED with respect to Moore's claim that USCG retaliated against him by canceling scheduled road trips.

### (5) Wrongful Investigation

Moore claims that DHS wrongfully opened an undercover investigation into his receipt of disability benefits in 2000. He asserts that this retaliatory investigation lead to a criminal indictment in 2002, which DOT improperly tried to use against him

in administrative proceedings.[8]  DHS argues that Moore has not
exhausted this claim.

The parties have not briefed the issue whether Moore's
wrongful investigation claim states a cause of action, and so the
Court does not address this issue.  The Court finds only that to
the extent this claim requires administrative exhaustion, it has
been exhausted.  Moore alleges that DOT's investigation was
commenced in retaliation for his pursuit of post-termination
administrative proceedings, and that DHS wrongfully used it
against him in those proceedings.  The claim, as alleged, plainly
arose "during the pendency of" and "grew out" of this litigation
and need not be further exhausted.  *McClain*, 519 F.3d at 273.
DHS's motion to dismiss is DENIED with respect to this claim.


(6)  Obstruction of the administrative process with respect
      to Moore's class action complaint

To the extent Moore claims that USCG improperly handled his
class action administrative complaint, the claim has not been
exhausted.  This claim apparently was the subject of separate
administrative proceedings, and Moore has presented no
explanation of its procedural posture and why it is properly

_____

[8] The indictment was dismissed without prejudice on June 13,
2005.  (*See* R. Doc. 51, Ex. 1 at 358.)

before the Court.  Accordingly, DHS's motion to dismiss this claim is GRANTED.

## IV.  CONCLUSION

For the reasons stated, DHS's motion is DENIED in part and GRANTED in part

New Orleans, Louisiana, this 3rd day of December 2009

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE